CRAWLEY, Judge.
Doris K. Rowley, d/b/a the Back Porch Restaurant, sued the City of Mobile, alleging breach of a lease agreement. Rowley alleged that the City had unreasonably withheld its consent to an assignment of the lease, in violation of the following provision of the lease:
“Lessee may not assign this lease or sublet all or any portion of the leased premises without the written consent of the Lessor, which Lessor agrees not to unreasonably withhold.”
The case was tried before a jury. Rowley testified that “on repeated occasions” in early 1992, she asked William Demouy, the real estate officer for the City, for consent to assign her lease. According to Rowley, De-mouy’s reply “was always that they — he couldn’t do it.... [Tjhey just did not want [her] to — to assign it.”
Demouy denied that he had ever withheld consent to an assignment of Rowley’s lease. He said that his discussions with Rowley before January 1993 had had to do with whether the City would approve a long-term lease, not whether the City would approve an assignment.
Demouy said that Rowley informed him, in January 1993, that “she had someone who ... would accept if the lease was assigned to them.” Demouy testified that he told Row-ley that “he would be happy to present to the [City] Council anything that she brought to [him]” for the Council’s approval and the mayor’s signature. Demouy never received anything from Rowley.
Rowley admitted that she did not prepare a proposed assignment for Demouy to present to the City Council. Explaining why she did not do so, Rowley testified as follows:
“What would have been the purpose of that when Mr. Demouy told me every time he couldn’t do it? So why should I pay an attorney to draw up an instrument that I had already been told was not going to be approved? I mean, that’s foolish.”
At the close of Rowley’s ease, the trial court granted the City’s motion for a directed verdict. The court gave the following reasons for its ruling:
“First of all, the- testimony from [Row-ley] herself was that she never executed an assignment with any prospective buyer.
“Secondly, that she never presented the City with an assignment. Which leads to the logical conclusion that Mr. Demouy never had anything to present to the Council.
“Further, Mr. Demouy testified that he never told her no, that he in fact told her to present whatever she had and he would take it to the Council. That testimony is uncontroverted.
“Finally, the express language of paragraph ten [of the lease] makes reference to unreasonable activity or an unreasonable withholding by the City. This record is devoid of any unreasonable conduct by the City of Mobile.
“So, I find as a matter of fact and law that [Rowley] has failed to produce proof by substantial evidence which would allow a question of fact to go to the jury.”
Rowley appealed, and the Supreme Court transferred the cause to this court pursuant to Ala.Code 1975, § 12-2-7(6).
 “The landlord’s rejection [of the as-signee or sublessee] should be judged under a test applying a reasonable commercial standard.” Homo-Goff Interiors, Inc. v. Cowden, 350 So.2d 1035, 1038 (Ala.1977). A tenant has the burden of proving that the *319 landlord acted unreasonably in withholding consent to an assignment. Fahrenwald v. LaBonte, 103 Idaho 751, 756, 653 P.2d 806, 811 (Idaho App.1982); Haack v. Great Atlantic & Pacific Tea Co., 603 S.W.2d 645 (Mo.App.1980); Annot., 54 A.L.R.3d 679, 683 (1974). Therefore, Rowley was required to prove not only that the City withheld its consent to an assignment of her lease, but also that the City’s action was unreasonable.
“Among the legitimate factors landlords may consider in assessing reasonableness: the financial responsibility of the proposed assignee or subtenant, whether the new tenant’s use will require alteration of the premises, the legality of the proposed use, the nature of the occupancy, and the compatibility of the tenant’s use with the uses of the other tenants in the same shopping center or office building. Courts have held it improper for a landlord to reject an assignee or sublessee on considerations of personal taste, sensibility or convenience.”
D. Thomas, 12 Thompson on Real Property § 97.06(c)(22)(iii) at 108 (1994). See generally Restatement (Second) of Property, Landlord and Tenant § 15.2(2) (Illustration g) (1977).
The evidence regarding whether, before January 1993, the City withheld consent to an assignment was in conflict. Row-ley testified that she discussed the matter with Demouy and that he refused to consent to her assigning the lease. Demouy said that he and Rowley did not discuss whether the City would allow an assignment; instead, he said, the discussion centered around whether the City would allow a long-term lease.
“When reviewing a directed verdict, this Court must examine the record to determine whether there was sufficient evidence to produce a conflict warranting jury consideration, viewing the evidence most favorably to the nonmovant. If, by any interpretation, the evidence can support a conclusion in favor of the nonmoving party, we must reverse.
“Because this case was filed after June 11, 1987, the substantial evidence rule applies. Ala.Code 1975, § 12-21-12. ‘Substantial evidence’ is 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Ballew v. Charter Realty ERA, 603 So.2d 877, 879 (Ala.1992) (citations omitted).
Viewing the conflicting testimony in the light most favorable to Rowley, we find it clear that one version of the evidence supported the conclusion that, before January 1993, the City withheld its consent to an assignment of Rowley’s lease. See Jack Frost Sales, Inc. v. Harris Trust & Sav. Bank, 104 Ill.App.3d 933, 944, 60 Ill.Dec. 703, 710, 433 N.E.2d 941, 948 (1982) (“A refusal to even consider a request is as much a refusal to consent as an express refusal to consent”).
If the only issue before the trial court on the motion for directed verdict had been whether the City withheld its consent to an assignment, then the directed verdict in favor of the City would have been erroneous. However, a tenant does not establish a prima facie ease merely by proving that the tenant requested consent and that the landlord refused consent. The tenant must also establish that the landlord’s refusal was unreasonable.
Although Alabama appellate courts have not specifically addressed the issue of what constitutes unreasonable refusal to consent to a sublease, there are decisions from other jurisdictions indicating that any negative response by a landlord to a tenant’s inquiry concerning assignment of a lease is unreasonable. See, e.g., Stern’s Gallery of Gifts, Inc. v. Corporate Property Investors, Inc., 176 Ga.App. 586, 337 S.E.2d 29 (1985). However, because we believe a landlord cannot reasonably be expected to consent to an assignment of a lease without knowing the identity of, and having pertinent information about, a proposed assignee, we think the better reasoned decisions are those holding that a landlord does not unreasonably withhold consent to an assignment unless the landlord is presented with — and rejects — a prospective assignee who is ready to assume the lease and who meets commercially reasonable standards.
“[A] condition precedent to the lessor’s duty to accept a sublessee is the tender to *320 him of a suitable tenant as a sublessee. Thus, before the [lessors] could possibly be held liable for failure to consent to a transfer of the lease, the [lessee] had the burden of proving that it had tendered a person who was ‘ready, willing and able’ to take over the lease and who, at the very least, met reasonable commercial standards.”
Jack Frost Sales, Inc. v. Harris Trust & Sav. Bank, 104 Ill.App.3d at 944, 60 Ill.Dec. at 711, 433 N.E.2d at 949 (citations omitted).
“Before a lessor’s duty to accept a subles-see arises, it must be tendered a suitable tenant as sublessee, i.e., one who is ready, willing and able to sublease the premises and who, at least, meets reasonable commercial standards.”
Bismarck Hotel Co. v. Sutherland, 175 Ill.App.3d 739, 746, 125 Ill.Dec. 15, 21, 529 N.E.2d 1091, 1097 (1988), appeal denied, 124 Ill.2d 553, 129 Ill.Dec. 147, 535 N.E.2d 912 (1989).
In order to prove that a landlord’s refusal to consent to an assignment or sublease was unreasonable, a tenant must establish that an assignee acceptable to the landlord was there to assume the lease. “[C]onsent to an assignment of a lease requires three parties, including an assignee, to accept the lease.” Jack Frost Sales, Inc. v. Harris Trust & Sav. Bank, 104 Ill.App.3d at 945, 60 Ill.Dec. at 711, 433 N.E.2d at 949. In Bismarck Hotel Co. v. Sutherland, the Illinois court held a tenant’s claim “insufficient at law because it did not allege the identities of any specific prospective sublessee [the tenant] lost as a result of [the landlord’s] prohibition against subletting.” 175 Ill.App.3d at 746, 125 Ill.Dec. at 20-21, 529 N.E.2d at 1096-97.
A lessor does not unreasonably withhold consent by requesting further information about the proposed sublessee. McKeon v. Williams, 104 Or.App. 106, 799 P.2d 198 (1990), affirmed, 312 Or. 322, 822 P.2d 699 (1991); Vranas & Associates, Inc. v. Family Pride Finer Foods, Inc., 147 Ill.App.3d 995, 101 Ill.Dec. 151, 498 N.E.2d 333 (1986), appeal denied, 113 Ill.2d 586, 106 Ill.Dec. 57, 505 N.E.2d 363 (1987).
A tenant has the burden of furnishing sufficient information about the proposed assignee to enable the landlord to determine whether it will consent to an assignment. D’Oca v. Delfakis, 130 Ariz. 470, 636 P.2d 1252 (Ariz.App.1981).
“The lessor is under no duty to seek out such information. In the absence of information concerning the proposed tenancy and the tenant, the lessor is justified in withholding consent.”
D’Oca v. Delfakis, 130 Ariz. at 472, 636 P.2d at 1254.
Here, the undisputed evidence demonstrates that Rowley did not provide the City with the name of, or any information about, a proposed assignee. Even viewing the evidence in the light most favorable to Rowley, we find it clear that Rowley merely informed Demouy that she had “someone” who would accept an assignment of the lease. Then, when Demouy told Rowley that “he would be happy to present to the [City] Council anything that she brought to [him],” for the Council’s approval and the mayor’s signature, Rowley did not provide Demouy with any further information. The trial court found it significant that Rowley “never executed an assignment with any prospective buyer” and “never presented the City with an assignment.” We agree. Rowley could, without violating the terms of the lease, have executed a proposed assignment — noting that it was subject to the City’s approval — and presented it to the Council.
Although Rowley presented enough evidence to raise a jury question about whether the City initially refused to consent to an assignment of her lease, she presented no evidence on the other issue for which she had the burden of proof, i.e., whether the City’s refusal to consent to an assignment was unreasonable. There was no evidence in the record to support a finding that Rowley presented the City with a commercially reasonable assignee and that the City rejected that assignee.
We hold that the trial court was correct in concluding that “[t]his record is devoid of any unreasonable conduct by the City of Mobile.” Accordingly, we affirm the trial court’s judg *321 ment based on the directed verdict in favor of the City.
AFFIRMED.
THIGPEN and MONROE, JJ., concur.
ROBERTSON, P.J., and YATES, J, dissent.